# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JONATHAN MARTINS, individually and on behalf of all others similarly situated, ) ) ) ) Plaintiff, ) ) v. ) ) VERMONT MUTUAL INSURANCE ) COMPANY, ) ) Defendant. ) ) | Civil Action No. 17-12360-FDS |

**SAYLOR, J.**

## MEMORANDUM AND ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

This is a putative class action concerning the scope of coverage of standard Massachusetts automobile policies. Jurisdiction is based on diversity of citizenship.

Plaintiff Jonathan Martins alleges that defendant Vermont Mutual Insurance Company improperly failed to pay damages for the "inherent diminution in value" of his automobile after an accident caused by one of its insureds. "Inherent diminution in value" refers to the fact that a vehicle involved in an accident typically has a lower market value, even after repairs have been made, due to a stigma attaching to such vehicles. Martins contends that an insurer is required to compensate for such a loss under Part 4 of the 2008 Standard Massachusetts Automobile Policy.

Martins has filed a motion for partial summary judgment, essentially seeking a declaration that Vermont Mutual is required to pay inherent diminution in value damages to third-party claimants. Vermont Mutual has filed a cross-motion for summary judgment,

contending that it has no such obligation.

For the following reasons, the Court concludes that Part 4 of the Standard Massachusetts Automobile Policy does not provide coverage for inherent diminution in value, and therefore summary judgment will be granted for Vermont Mutual on all claims.

**I.      Background**

   **A.      Factual Background**

On June 18, 2016, Jonathan Martins purchased a 2015 Nissan Altima for $20,472.00. (Pl. Ex. 1).

On January 23, 2017, Martins's vehicle was damaged when it collided with a vehicle being driven by Elhadjmamado Dansoko. (Pl. SUF ¶ 9). At the time of the collision, Dansoko was insured under a policy issued by Vermont Mutual Insurance Company. (Pl. SUF ¶ 17).

Dansoko's policy provided coverage for the period from January 20, 2017, to January 20, 2018. (Murray Aff. Ex. 2). The policy used the 2008 edition of the Standard Massachusetts Automobile Insurance Policy. (*Id.* Ex. 3). Part 4 of the standard policy, titled "Damage to Someone Else's Property," provided that the insurer would

> pay damages to someone else whose auto or other property is damaged in an accident. The damages we will pay are the amounts that person is legally entitled to collect for property damage through a court judgment or settlement.
> . . . Damages include any applicable sales tax and the costs resulting from the loss of use of the damaged property.

(*Id.* Ex. 3 at 13).

Martins reported the accident to his insurer, Safety Insurance Company. Safety paid Martins $11,711.80 to cover the full costs of repairs to his vehicle. (Pl. SUF ¶¶ 19, 20; Murray Aff. Ex. 1).

In February 2017, Safety presented a subrogation claim to Vermont Mutual for the

repairs to the vehicle. (Murray Aff. Ex. 1). After determining that Dansoko was liable for the accident, Vermont Mutual paid Safety $12,942.80, which included $11,711.80 for repairs, $331 for towing and storage, and $900 for a rental car. (Pl. SUF ¶¶ 11, 20).[1]

### B. Procedural Background

On June 26, 2017, an attorney for Martins sent a letter to Vermont Mutual demanding payment of $6,129.00 for the "inherent diminished value" of the car. (Pl. SUF ¶ 21-22; Michelle Martin Aff. ¶ 4). On July 11, 2017, Michelle Martin, a Vermont Mutual Senior Claim Representative, responded by e-mail and made a settlement offer. (*Id.* Ex. 5).

Martins does not appear to have responded to the offer. He next contacted Vermont Mutual on August 23, 2017, when his attorney sent a demand letter under Mass. Gen. Laws ch. 93A. (Pl. SUF ¶ 23; Martin Aff. Ex. 6). Essentially, the letter contended that Vermont Mutual had a practice of intentionally and knowingly making unfair and unreasonably low offers to cover damages for the inherent diminution in value of third-party claimants. (Martin Aff. Ex. 6 at 2-3). The letter demanded that Vermont Mutual "immediately pay all reasonable diminution in value damages owed to [Martins] *and* [the other] class members." (*Id.* at 4-6).

On August 23, 2017 (the same day the Chapter 93A demand letter was sent), Martins filed an action against Vermont Mutual in Suffolk Superior Court. The complaint asserted a claim for breach of contract and sought declaratory judgment.

On September 22, 2017, Vermont Mutual responded to the Chapter 93A demand letter, denying any liability to Martins or the putative class. However, Vermont Mutual made an increased settlement offer to resolve the claim. (Murray Aff. Ex. 7). Martins rejected that offer.

---

[1] It appears that Vermont Mutual subsequently paid Martins an additional $635.91 to cover the full expense of the rental car. (Murray Aff. Ex. 1).

3

On October 13, 2017, Martins filed an amended complaint that asserted five claims under Chapter 93A, four of which are based on alleged violations of Mass. Gen. Laws ch. 176D, §§ 3(9)(c), (d), (f), and (n). Vermont Mutual then removed the case to this court.

On March 1, 2019, Vermont Mutual filed a motion for summary judgment. Martins filed a motion for partial summary judgment on the same day.

## II.  Analysis

Each of the claims essentially involves the same question: whether, under Part 4 of the 2008 Standard Massachusetts Automobile Insurance Policy, an automobile insurer must pay a claim for the "inherent diminished value" of a car that has been damaged and subsequently repaired.

An automobile that has been involved in an accident typically suffers an inherent diminution in value. Inherent diminution in value has been defined as "the difference between the market value of [the] automobile immediately before the accident and its market value post collision" after it has been "fully repaired." *Given v. Commerce Ins. Co.*, 440 Mass. 207 (2003). This concept of damages is "premised on the theory that some stigma attaches to the [automobile] from its involvement in a prior collision, such that its market value is diminished despite the fact that [it] has been restored to its precollision physical condition." *Id.* at 207-08.

Essentially, Martins contends as follows: Part 4 of the standard Massachusetts policy permits a third party to recover from the insurer any amount that a third party would be "legally entitled to collect [from the insured] for property damage through a court judgment or settlement." According to Martins, inherent diminution in value is a form of damage that is generally "recoverable in tort." (Pl. Mem. at 5). He cites to a variety of sources, including court opinions from states other than Massachusetts; websites of "car valuation companies"; affidavits

4

and testimony of Vermont Mutual employees; and the Restatement (First) of Torts. Because such damages are recoverable in tort, he contends, they are recoverable under the policy.

Vermont Mutual contends that a claimant is entitled under Massachusetts law to recover only the cost to repair the property or the property's diminished market value, whichever is less, and that therefore inherent diminution in value damages are not recoverable.

### A. Massachusetts Insurance Policies– Generally

Massachusetts requires automobile insurers to use standard policies. *See Colby v. Metro. Prop. & Cas. Ins. Co.*, 420 Mass. 799, 806 (1995). By statute, certain types of coverage must be included in a standard policy. *Id.* The statutory provision requiring property damage coverage is Mass. Gen. Laws ch. 90, § 34O. Pursuant to Section 34O, "[e]very insurer issuing or executing a motor vehicle liability policy . . . shall also provide property damage liability coverage for the policyholder . . . . Property damage liability insurance is insurance containing provisions as described in this section, among such other provisions, including conditions, exclusions and limitations, as the commissioner of insurance may approve." *Id.* Section 34O provides further that "[e]very policy of property damage liability insurance shall provide that the insurer will pay on behalf of the insured all sums the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including loss of use thereof . . . caused by accident . . . ." *Id.*

"Within the limits set by statute, the Commissioner of Insurance . . . decides what the terms of the standard policy will be . . . and the commissioner's interpretation of the relevant statutes, although not controlling, is entitled to deference." *Colby*, 420 Mass. at 806; *accord Given*, 440 Mass. at 210; *Skiffington v. Liberty Mut. Ins. Co.*, 93 Mass. App. Ct. 1, 4 (2018) (explaining that the Commissioner of Insurance has the authority to fill gaps in statutory

requirements in determining what terms of policy will be).

The interpretation of an insurance policy, like any contract, is a question of law. *Merchants Ins. Co. of N.H. v. U.S. Fid. And Guar. Co.*, 143 F.3d 5, 8 (1st Cir. 1998) ("Under Massachusetts law the interpretation of an insurance policy and the determination of the policy-dictated rights and obligations are questions of law . . . ."); *Commerce Ins. Co. v. Blackburn*, 81 Mass. App. Ct. 519 (2012). The terms of an insurance policy must "be construed according to the fair meaning of the language used, as applied to the subject matter" and reasonable effect must be given to each of the policy's provisions. *Blackburn*, 81 Mass. App. Ct. at 521 (quoting *Mass. Insurers Insolvency Fund v. Premier Ins. Co.*, 449 Mass. 422, 426 (2008). "The policy must be construed consistent with the principle that 'policy language must be read as a whole and in the context of the insurance scheme in Massachusetts.'" *Big Wheel Truck Sales, Inc. v. Safety Ins. Co.*, 91 Mass. App. Ct. 1113 (2017) (quoting *Mass. Insurers*, 449 Mass. at 427).

### B.     The *Given* Case

The starting point for the analysis is the *Given* case, in which the Massachusetts Supreme Judicial Court considered a question similar to the one at issue here: "[w]hether Massachusetts automobile insurers must pay claims of policyholders for so-called 'inherent diminished value' pursuant to Part 7 (Collision) coverage under the Standard Automobile Insurance Policy mandated by the Commissioner of Insurance?" 440 Mass. at 208. The SJC answered that question in the negative.

In interpreting the standard policy, the SJC noted that the straightforward language of the policy stated that insureds could be paid the cost of repair or the diminution in value, but not both. *Id.* at 211-12. The court also "perus[ed]" the "vast network of" Massachusetts "statutory and regulatory provisions" concerning automobile insurance for "any reference to the concept of

inherent diminished value," and found nothing. 440 Mass. at 213-14. "From [this] absence," the SJC concluded, "it is apparent that the Commissioner of Insurance [] does not interpret the standard policy's collision coverage to encompass compensation for inherent diminished value in addition to compensation for the cost of repairs." *Id.* at 214.[2]

Here, as in *Given*, there is nothing in the policy that expressly provides for the payment of inherent diminution in value. Nor is there any reference anywhere in the statutory and regulatory framework to that concept. Nonetheless, *Given* does not provide the precise answer to the question at issue here. The question presented in that case concerned only Part 7 of the standard policy, which provided that the insurer "will pay for any direct and accidental damage to your auto caused by a collision." *Id.* at 208. Furthermore, the SJC's opinion relied in part on paragraph 11 of the standard policy's "general provisions and exclusions section," which provided, in part, that "[i]n any event, [the insurer] will never pay more than what it would cost to repair or replace the damaged property." *Id.* at 212. And paragraph 11 of the general provisions only applies to damages due "[u]nder . . . Parts 7, 8, and 9," not Part 4. *Id.* Thus, no Massachusetts case appears to have addressed whether damages for inherent diminution in value are recoverable under Part 4 of the standard policy.

C. **The *Guaranty-First* and *Clean Harbors* Decisions**

The question then becomes whether damages for inherent diminution in value are

---

[2] Vermont Mutual cites to a 2002 letter by Daniel R. Judson, the former Deputy Commissioner and General Counsel of the Massachusetts Department of Insurance, written in response to an insurance company that had asked the MDOI "whether the Massachusetts Standard Automobile Insurance Policy . . . provides coverage for so-called 'inherent diminished value.'" (Kinton Aff., Ex. 4). In the letter, Judson wrote that "it has been the consistent position of the [MDOI] that so-called 'diminution of value' or 'inherent diminished value' is not covered under the collision, limited collision or comprehensive coverage parts of the Standard Policy . . ." (*Id.*). The letter continued, "[a]ccordingly, for the reasons mentioned above, it is the position of the [MDOI] that the Standard Policy has not, since approximately 1977, and does not currently provide coverage for so-called 'inherent diminished value,' nor has the [MDOI] ever intended the language to provide such coverage." (*Id.*). That letter predates *Given*, but is clearly consistent with its holding.

7

recoverable in tort under Massachusetts law—or, more precisely, whether a plaintiff would be "legally entitled to collect" for such damages in court. No case appears to have directly considered the issue. Nonetheless, two cases provide considerable guidance: *Guaranty-First Trust Co v. Textron, Inc.*, 416 Mass. 332 (1993), and *Clean Harbors Environmental Services, Inc. v. Boston Basement Technologies, Inc.*, 75 Mass. App. Ct. 709 (2009).[3]

In *Guaranty-Trust*, the District Court certified a question to the Supreme Judicial Court concerning the appropriate manner to calculate the amount of recovery due under Mass. Gen. Laws. ch. 21E "for damage to real or personal property caused by a release or threat of release of hazardous material." 416 Mass. at 332. In considering that question, the SJC clarified two principles of Massachusetts law. First, the SJC made clear that '[t]he general rule for measuring property damage is diminution in market value.'" *Id.* at 336 (quoting *Trinity Church in the City of Boston v. John Hancock Mut. Life Ins. Co.*, 399 Mass. 43, 48 (1987)). The SJC also made clear, however, that "[i]f the injury is reasonably curable by repairs, the expense of repairs, if less than the diminished market value, is the measure of recovery.'" *Id.* (quoting *Belkus v. Brockton*, 282 Mass. 285, 288 (1933)).

The Massachusetts Appeals Court reached a similar conclusion in *Clean Harbors*. There, the court analyzed an exclusion in an insurance policy for pollution cleanup costs and an "exception to that exclusion providing coverage for common-law property damage." 75 Mass. App. Ct. at 709. In analyzing whether the exclusion or the exception to the exclusion applied, the court reiterated that under Massachusetts law, "[w]hen [an] injury is temporary, that is 'reasonably curable by repairs, the expense of repairs, if less than the diminished market value, is

---

[3] Both parties commit significant portions of their memoranda to addressing cases from other jurisdictions. Those cases, however, are "of limited utility, as the determination of what is or is not covered under an automobile policy is driven by the precise language of the policy in question and the statutory and regulatory background governing automobile insurance in that jurisdiction." *Given*, 440 Mass. at 210, n. 5.

the measure of recovery.'" *Id.* at 714 (quoting *Black v. Coastal Oil New England, Inc.*, 45 Mass. App. Ct. 461, 465 (1998)). *See In re Malden Mills Indus. Inc.,* 303 B.R. 688, 699 (1st Cir. BAP 2004) ("It is clear that the standard for measuring damages to realty in Massachusetts is diminution in market value or the cost of curing the injury, whichever is less.").

Those cases clearly suggest that a plaintiff asserting a tort claim for damage to property cannot recover both for the cost of repairs and for loss of value. Martins, however, contends that *Guaranty-Trust* and *Clean Harbors* are inapplicable because they deal with damages in the context of real property, rather than personal property. (Pl. Resp. Mem. at 2). No Massachusetts case appears to have addressed that exact issue—that is, whether real and personal property should be treated the same for these purposes.[4] But there is no obvious reason why the rule ought to be different for real and personal property. The differences between the two types of property (for example, the fact that real property is not movable, or that it is inherently unique) would seem to have no bearing on the application of the principle. Furthermore, real property, like personal property, can suffer an inherent diminution in value based on a past history of damages, even where the damage has been repaired. For example, a property that was subject to environmental contamination that was later remediated surely has a lower market value than a property that has never been contaminated at all. Presumably, the reason would be the same as that for a repaired automobile: the prospective buyer would never have complete assurance that the repairs were, in fact, entirely successful; the buyer would inevitably bear that risk; and therefore the property would bear a certain degree of stigma, which would be reflected in a lower

---

[4] Vermont Mutual cites to 14D Mass. Prac., Summary of Basic Law, § 16.72, in support of its contention that the same principle applies to both real and personal property. That treatise states that "[w]hen a defendant by his negligence damages the property of another, the general rule for measuring damages [is] an amount equal to the difference between the fair market value of the property before and after the injury" and that "[t]his rule applies to both real property and personal property." The sources cited by Section 16.72 do not, however, appear to support the latter statement.

9

price.

In any event, there is no reason to conclude that the law of Massachusetts permits the recovery of damages in a tort action for the inherent diminished value of personal property. No Massachusetts case has so held, and the case law as it exists suggests the contrary. Furthermore, the Massachusetts Commissioner of Insurance has never taken the position that such damages are recoverable under a standard policy.[5] It follows that Vermont Mutual had no obligation to offer or pay Martins for the inherent diminution in value of his vehicle, because he would not have been "legally entitled to collect for . . . [that] damage through a court judgment or settlement."[6] Summary judgment in favor of Vermont Mutual is therefore appropriate as to all claims.

### D. Count Five (Mass. Gen. Laws ch. 176D, § 3(9)(f))

Count Five warrants a separate discussion. That count asserts a claim under Mass. Gen. Laws ch. 93A and alleges that Vermont Mutual violated Mass. Gen. Laws ch. 176D, § 3(9)(f). Section 3(9) of ch. 176D provides a set of "acts [and] omissions" that qualify as "unfair claim settlement practice[s]" under Massachusetts law. In particular, subsection (f) provides that it is an unfair claim settlement practice to "[f]ail[] to effectuate prompt, fair and equitable settlements of claims *in which liability has become reasonably clear*." (emphasis added).

Count Five alleges that "Vermont Mutual was/is aware of its legal duty to pay Martins

---

[5] Vermont Mutual cites to a 2015 letter written by John A. O'Herron, an Insurance Examiner at the MDOI. (Kinton Aff., Ex. 5). That letter essentially describes the decision of Vermont Mutual to make an offer to cover a claim for "diminished value" as "unusual" and summarizes an earlier advisory ruling of the MDOI as having taken the position that "the Massachusetts Automobile Insurance Policy does not provide and never has provided coverage for inherent diminished value." (*Id.*).

[6] It is also noteworthy that a contrary holding would create an anomaly in Massachusetts insurance coverage. If Martins is correct, a third party could recover damages for inherent diminution in value—but the insured himself could not.

and Class Members the fair market value of the diminution in value damages [their] vehicles sustained as part of their respective third-party property damage claims." (Am. Compl. ¶ 122). But because that issue has not yet been decided by a Massachusetts court, Vermont Mutual could not possibly have been aware of any such duty. Accordingly, it cannot be deemed to have violated Mass. Gen. Laws ch. 176D, § 3(9)(f), and summary judgment as to Count Five is also appropriate on that separate ground.

### III.    Conclusion

For the foregoing reasons, the motion of defendant Vermont Mutual Insurance Company for summary judgment is GRANTED, and the motion of plaintiff Jonathan Martins for partial summary judgment is DENIED.

**So Ordered.**


/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  August 14, 2019                United States District Judge